Dear Representative Strain:
You have requested an opinion of the Attorney General regarding the powers and duties of Waterworks District No. 15 (WD15) and Sewerage District No. 14 (SD14) which were created by the St. Tammany Parish Police Jury (Police Jury) on November 16, 1989. The Districts are coterminous and comprise the geographical area known as the Tammany Hills Subdivision (Tammany Hills). The Districts have undertaken programs to provide waterworks and sewer system improvements consisting of approximately 15 miles of distribution and collection lines. WD15 intends to fund the cost of these improvements with a $16 per front foot assessment against the property abutting the improvements. SD14 intends to levy an additional $20 per front foot assessment for the cost of its improvements.
You ask several questions, all of which relate to the authority of the Districts to undertake these improvements and to levy the special assessments against the property benefited therefrom.
The division of parishes into waterworks districts is provided for in R.S. 33:3811 which provides, in pertinent part, the following:
 Police juries may divide their respective parishes into one or more waterworks districts, with such name or numbers as the police jury may designate.
Section 3812 provides, in pertinent part, with respect to waterworks commissioners:
 A. All waterworks districts created under the provisions of this Chapter shall be governed by a board of five members, to be known as waterworks commissioners.
 B. The members of the board shall be known as waterworks commissioners. Each shall be a resident of and assessed with not less than five hundred dollars worth of real estate in the district.
Section 3813 provides for the appointment of waterworks commissioners, their terms and vacancies:
 A. In the ordinance creating a waterworks district under this Chapter, the police jury shall appoint five commissioners recommended in the petition for the creation of the district.
 B. If no recommendation is made in the said petition, or no petition is received, the police jury shall exercise discretion in the choice of said commissioners. The said five commissioners shall, at their first meeting, determine by lot their terms of office, which shall be respectively, one, two, three, four and five years, and they shall serve until their successors shall have been appointed and qualified. Thereafter all commissioners shall serve at the pleasure of the authority which appointed them.
The powers of waterworks districts are set forth in Section 3815 as follows:
 A. Any waterworks district thus created and named or numbered by a police jury shall constitute a body corporate in law, with all the powers of a corporation, and all powers necessary for it to carry out the objects for which it was created. The waterworks district may expropriate property for any purpose that it may find necessary in the operation of its waterworks system, and may acquire by donation, purchase, or expropriation any existing waterworks system in the district. Waterworks districts may dig and excavate the roads, streets, sidewalks, and alleys in the district for the purpose of laying pipeline or water mains. It may acquire any and all machinery necessary for the purpose of effecting the object for which it is formed and shall own all sites which are acquired either by donation, purchase, expropriation, exchange, or otherwise in full ownership.
Section 3817 provides for meeting places and the appointment of officers and the fiscal agents for the waterworks districts:
 A. The police jury shall designate a time and place within the waterworks district for the commissioners to meet. The commissioners must meet within sixty days after the date of their appointment and elect officers as follows:
 (1) They shall elect from among their number a president and a vice president. The president shall preside over the meetings of the board and perform other duties usually required of presidents of corporate bodies. The vice president shall act in the absence of the president.
 (2) They shall elect as secretary a person assessed with property in his name or in the name of his wife to the amount of at least five hundred dollars. The secretary shall furnish a bond in a sum equal to the amount of taxes collected in the district and the amount of funds otherwise held by or collected by him during any one year. The premium on his bond shall be paid by the waterworks district.
 A. The waterworks commissioners may, in their discretion, employ such secretary on either a part-time or full-time basis, and shall fix the salary of such position, which shall not exceed three thousand six hundred dollars per annum, payable monthly. The secretary shall perform all of the duties required of him by the board of commissioners of the waterworks district. The secretary also may be treasurer.
 C. (1) The board of commissioners of the water district shall, at the time of their organization, select one of the solvent chartered banks within the parish where the district is organized in which all of the money of the district shall be deposited. They shall thereafter on the first Monday in June annually elect a fiscal agent after an advertisement of fifteen days in a newspaper published in the district, and if there be no newspaper within the district, then in the official journal of the parish where the district is located . . .
 (2) Any violation of this subsection shall be sufficient grounds for the summary removal of the president and secretary of the board.
Section 3818 provides for the powers of the board of commissioners as follows:
 A. The board of commissioners of the waterworks district shall have absolute control and authority over the waterworks in the district and shall adopt by-laws, rules and regulations for the proper conduct and operation of a waterworks system in their district. The board may employ the necessary labor for directing and installing a waterworks system in their district and may employ the services of an attorney when necessary and fix his fees or his salary.
 B. The board may effect improvement in the water system and for this purpose enter into contracts for the performance of work or the purchase of machinery. The board itself may supervise work under its contracts, or may delegate the supervision to a licensed engineer who shall be a citizen of Louisiana.
Section 3819 provides for meetings of the commissioners, absences and compensation as follows:
 A. The commissioners of each waterworks district may meet as often as necessary, but shall meet at least once every three months. The board of waterworks commissioners by resolution shall designate a regular meeting place for the holding of its meetings, which shall be held at a place located within the waterworks district or at the parish seat of the parish in which the district is located, even though the parish seat is not within the boundaries of the waterworks district. The absence of a commissioner from any four consecutive meetings shall be deemed to create a vacancy and it shall be filled by the police jury.The parish governing authority in the parish in which each waterworks district is located may fix the per diem to be paid to each of the members of the board of commissioners of the respective waterworks districts in an amount not to exceed sixty dollars for each meeting they attend, up to and including twenty-four meetings in each year and for each special meeting not to exceed twelve special meetings in each year. . . .
Section 3820 authorizes the commissioners to fix rates at which it will supply water to persons within, as well as outside the district, based upon a flat rate or a meter rate.
Section 3821 provides the following with respect to the issuance of bonds and the levy of taxes:
 Waterworks districts shall be subdivisions of the state and as such may issue bonds and levy taxes in accordance with the provisions of Section 14 of Article XIV of the Constitution of 1921. (See now, R.S. 39:551 et seq.)
The authority for the construction, improvement and maintenance of waterworks systems, as well as the levy and collection of special assessments to fund same, specific to St. Tammany Parish, is found in Section 3822.2. It provides in pertinent part:
 A. The governing authority of St. Tammany Parish or of any municipality therein or of any waterworks district in St. Tammany Parish is hereby vested with full power and authority, after having been petitioned by sixty percent of the resident property owners, or in its own discretion,
to establish, acquire, construct, improve, extend, and maintain within said political subdivision a waterworks system or systems, including such treatment facilities as may be required, with all necessary equipment and installations in connection therewith. . . .The governing authority shall have full power and authority to levy and collect local or special assessments on the property within such political subdivision or the area so served or to establish rates for the sale of water within such political subdivision or the area so served sufficient in amount to defray the total cost of said work, including the cost of street intersections and installations and connections necessary to connect said system with the main water system of the political subdivision.
 B. The governing authority of any political subdivision taking advantage of the provisions of this Section shall comply with the requirements of R.S. 33:3823. (Emphasis added.)
As can be gleaned from the above, WD15, constituting a waterworks district within St. Tammany Parish, is vested with broad and sweeping powers and authority to construct, improve, extend and maintain a waterworks system and to levy and collect local or special assessments on the property so served. The reference to R.S. 33:3823 relates to the Notice of Intention to construct the improvements and the opportunity for public hearings. It provides, in pertinent part, the following:
 A. Any political subdivision taking advantage of R.S. 33:3822 through 33:3835 shall, through its governing authority, be required to adopt a resolution giving notice of its intention to establish, acquire, construct, improve, extend and maintain such water system or systems and embody therein in a general way the improvements contemplated, a list of streets or portions thereof or area or areas which are to be improved or benefited thereby, and the manner of payment therefor. Such notice shall be signed by the chief executive officer of the governing authority and shall contain substantially all things set forth in said resolution, and shall set forth further that the authority ordering the giving of such notice will, in open session, on the date and at the time and place named, hear all objections to the proposed improvements and the manner of payment therefor, and, after hearing and passing on such objections, proceed, if it so determines, to order such improvements provided for. Such notice of intention shall be published once a week for three consecutive weeks in a newspaper published within the political subdivision, or if there is none published in the political subdivision, in some newspaper published in the parish wherein the political subdivision is located or in an adjoining parish. . . .
Section 3824 authorizes waterworks districts, after the hearing and consideration of objections afforded under Section 3823, to have the necessary plans and specifications for the work prepared and adopt a resolution or ordinance authorizing the advertisement for bids therefor. The notice calling for sealed bids must be signed by the chief executive officer of the district and published for three consecutive weeks. It must also contain a general description of the work contemplated and the date and place for the reception and opening of the bids.
Section 3825 provides for the bid award to the lowest responsible bidder. The contract awarded shall be authorized by resolution empowering the chief executive officer of the governing authority to execute the contract for, and on behalf of, the waterworks district.
Section 3826 provides, in pertinent part, with the respect to the special assessment chargeable to each lot:
 The political subdivision, upon the award of such contract, shall forthwith or at a reasonable time thereafter require of the engineers of the political subdivision a duly certified statement or report showing in detail the total cost of the improvements, including the cost of street intersections, outside water facilities, engineering, legal and other fees, and all other expenses incidental to the cost of said improvements. If a local or special assessment has been levied the report shall also show the amount of the cost chargeable to each lot or parcel of real estate to be improved or benefited in the proportion that its front footage bears to the total front footage to be assessed, as shall be determined by the governing authority. . . .
The actual levy of local and special assessments is governed by Section 3827 which provides, in pertinent part, the following:
 A. Upon receipt of the certified statement or report of the engineer of the political subdivision as provided for in the preceding section, the governing authority shall review said certified statement or report, including the proposed local or special assessments, and thereafter shall make a determination as to whether each lot or parcel of real estate to be assessed will be benefited to an amount not less than the proposed local or special assessment. . . .
 B. Following said review and finding as to benefit by said governing authority there shall be mailed to each property owner to be assessed a notice advising each property owner of his proposed assessment and the manner and time for payment thereof. Said notice shall set forth a general description of the proposed improvements, such description of the property to be assessed and the location thereof as the governing authority may deem necessary, and shall notify the property owner to advise the political subdivision in writing within fifteen days from the date of said notice if inaccuracies exist in the proposed assessment. The aforesaid notice shall be given by depositing said written notice in the United States mail, postage paid, and addressed to the property owner at his address as it appeared on the last approved tax roll on which the property was assessed for taxes by the political subdivision. The certificate of the clerk or secretary of the governing authority levying any such assessments that the aforesaid notice has been given in writing to all property owners to be assessed shall establish a conclusive legal presumption that all requirements of notice as set forth hereinabove have been legally satisfied.
 C. After thirty days has elapsed from the date of the mailing of said notice of the proposed assessments, the governing authority shall adopt an ordinance levying a local or special assessment on each lot or parcel of real estate to be improved or benefited in proportion that its front footage bears to all the abutting lots or parcels of real estate to be improved or benefited by the laying of such lines or installation of such improvements, including all of the items above set forth. If a local or special assessment is levied by ordinance, it shall be due and collectable immediately on its passage, and, if not paid within thirty days from the date of the adoption of said ordinance, it will be conclusively presumed that any property owner whose property is affected thereby, exercises the right and option, which is hereby authorized, to pay the amount due in equal installments and extending over a period not exceeding forty years, all within the discretion of the governing authority of said political subdivision, and as provided for in the ordinance levying such local or special assessments. The first installment shall become due on December thirty-first of the then current year, or one year after the date of the assessment ordinance herein provided for, in the discretion of the governing authority of the political subdivision, and annually thereafter.
 D. If a special or local assessment is levied, a certified copy of the ordinance levying said local or special assessment on the real estate as aforesaid shall be filed with the clerk of court of the parish in which the political subdivision is situated, who shall forthwith record the same in the mortgage records of the parish, and when so filed and recorded, shall operate as a lien and privilege against all real estate therein assessed, and which aforesaid lien and privilege shall prime all of the claims except taxes, and prior recorded local or special assessments levied for streets, sewerage, or water improvements.
 E. (1) The failure to pay any installment or the interest thereon when due, shall ipso facto cause all other installments and the interest thereon to become due and payable and the political subdivision may, after thirty days from the day of such default, proceed against the property for the collection of the total amount due thereon, including interest, plus ten percent additional on the principal and interest of the past due installment or installments or ten percent of the amount sued for, and in the event judgment is necessary to effect collection, ten percent of the amount of the judgment rendered, as attorney's fees . . .
 (3) In any such suit to collect any delinquent assessments, a certified copy of the assessment ordinance, and any affidavits and exhibits annexed thereto which establish the correctness of the delinquent assessment shall be admissible, self-authenticating, and sufficient to establish prima facie proof of such demand. (Emphasis added.)
Section 3834 provides the following for the professional services of engineers and attorneys:
 Political subdivisions which take advantage of the provisions of R.S. 33:3822 through 33:3835 be and they are hereby authorized, through their respective governing authorities, if they elect to do so, to engage the services of an engineer and provide for his payment, who shall prepare all plans and specifications for said work and improvement herein authorized, and the governing authority shall approve such plans and specifications by a proper resolution duly adopted The governing authority of the political subdivision is also hereby authorized to employ attorneys to handle all legal work in connection with such improvements herein authorized, and to provide for the payment of their fee and said attorneys, in addition to their other duties, shall prepare a complete transcript of the record of the proceedings had covering each and every project completed hereunder
The statute under which the validity of any proceedings can be contested is found at Section 3835. It provides, in pertinent part, the following:
 No contest or proceeding to question the validity or legality of any resolutions or ordinances adopted or proceedings had under the provisions of R.S. 33:3822 through 33:3835 shall be begun in any court by any person for any cause whatsoever, after the expiration of thirty days from the date when the resolution, ordinance or proceeding was published, and after such time the regularity of such resolution, ordinance, or proceeding shall be conclusively presumed. If the validity of any certificates or amortized notes issued under the provisions of R.S. 33:3835 is not raised within thirty days from the date publication of the resolution or ordinance authorizing the issuing of said certificates or amortized note and fixing their terms, the authority to issue said certificates or amortized note, the legality thereof and of the local or special assessments necessary to pay the same shall be conclusively presumed and no court shall thereafter have authority to inquire into such matters. (Emphasis added.)
The creation of sewerage districts by police juries is authorized by R.S. 33:3881 which provides, in pertinent part, the following:
 A. Except as provided in R.S. 33:3911(B), police juries may create sewerage districts composed of territory outside the corporate limits of municipalities. . . .
* * *
 D. Sewerage districts so created shall be subdivisions of the state within the meaning of the statutes relating to incurring debt and issuing bonds.
The Notice of Intent to create a sewerage district is found in Section 3882. It provides, in pertinent part, the following:
 Notice of intention to create a sewerage district shall be ordered by resolution which shall state the territory the sewerage district is to be composed of, and its proposed boundaries
 No sewerage districts shall be created hereunder until this notice has been given. Police juries may give this notice upon their own initiative. They shall give the notice when required so to do by the petition in writing of one-fourth of the property taxpayers residing within the proposed district.
The formation of sewerage districts is provided for in Section 3883. It provides, in pertinent part, the following:
 The police jury shall hear all objections at the time appointed, or at any time to which the hearing may be adjourned and pass upon the same, and its decision shall be final and conclusive.
The powers and authority of sewerage districts are set forth in Section 3885 which provides, in pertinent part, the following:
 Sewerage districts created under this Sub-part shall constitute public corporations, and as such shall have all powers of public corporations, including perpetual existence; the power to incur debt and contract obligations; sue and be sued; to do and perform all acts in their corporate capacity and in their corporate names, which are necessary and proper for the purpose of constructing and maintaining sewers and sewerage disposal works within their territorial limits; and generally to perform any and all acts and duties necessary to carry out the objects and purposes of their creation . . .
 Any sewerage district, through its governing authority, may by an ordinance or resolution establish, maintain and collect rates, charges, or connection charges for any service rendered by the sewerage district to be paid by the owner of each parcel of real estate, or building that is connected with and uses or is served by the sewerage system of the district, and may readjust such rates, charges or connection charges, from time to time . . .
Section 3885.1 authorizes sewerage districts, through their board of supervisors, to employ the services of an attorney when necessary and to fix his fees or salary.
Section 3981 provides, in pertinent part, as follows with regard to the establishment of sewerage systems:
 The governing authority of any sewerage district, either within or without the corporate limits of a municipal corporation, is hereby vested with full power and authority to establish, acquire, construct, improve, extend and maintain within said district a sewerage system or systems, including such sewerage disposal facilities as may be required, with all necessary equipment and installations in connection therewith and it shall have full power and authority to levy and collect local or special assessments on the real property to be benefited thereby within the said district, or the area served within the said district, sufficient in amount to defray the total cost of said work (Emphasis added.)
Section 3982 provides the following with respect to the Notice of Intention to establish sewer systems and the objections thereto:
 A. (1) Any sewerage district taking advantage of this Sub-part shall, through its governing authority, be required to adopt a resolution giving notice of its intention to establish, acquire, construct, improve, extend and maintain such sewerage system or systems and other improvements herein authorized, and embody therein, in a general way, the improvements contemplated, a list of streets or portions thereof or area or areas which are to be improved or sewered, and the manner of payment therefor.
 (2)(a) Such notice shall be signed by the chief executive officer of the governing authority and shall contain substantially all things set forth in said resolution, and shall set forth further that the authority ordering the giving of such notice will, in open session, on the date and at the time and place named, hear all objections to the proposed improvements and the manner of payment therefor.
 (b) Such notice of intention shall be published once a week for three consecutive weeks, the first at least fifteen days prior to the date set for the hearing in the official journal of the governing authority.
 (B) After hearing and passing on the objections, the governing authority may order the proposed improvements constructed in the manner hereinafter provided. However, the governing authority of any district shall not order the construction of the proposed improvements in the event there is filed at the public hearing written objections to the proposed improvements:
* * *
 (a) Signed by the resident property owners owning more than one-half of the total front feet of property which will be assessed to pay the cost of said improvements, if the assessments are to be on a front foot basis.
* * *
 (2) Such majority shall be determined after considering the front footage. and the owners of such portion shall be determined by the conveyance records or the tax assessor's records of the parish.
The statutory provisions pertaining to bid advertisement (Section 3983) contract award (Section 3984), the total amounts chargeable to each lot (Section 3985) and the levy of special assessment, default and assessment liens (Section 3986) are very similar to the statutes corresponding to waterworks districts discussed in detail hereinabove. It should be noted that, pursuant to Section 3986, the governing authority of a sewerage district may, in its discretion, allow the payment of any special assessment to be made in equal annual installments extending over a period not exceeding twenty years.
Attached to your opinion are Ordinance Nos. 89-1209 and 89-1210 which create WD15 and SD14, respectively. A review of their provisions reveals no infirmities which would render the creation of the two districts null and void. Also, you have provided us with copies of the "NOTICE TO PROPERTY OWNERS" issued by WD15 and SD14. These documents constitute the formal notice required by Sections 3827 and 3982, and appear to be correct as to form and legality.
We have also been provided with a copy of a pleading in the case of SouthAbita Springs Subdivision and Home Property Owners et al v. St. TammanyParish, Division 10, for Water Works Districts 15, and Division 15,Sewerage District 14, bearing Docket No. 93-12289-D. This pleading consists of an Answer and Exceptions filed in the 22nd Judicial District Court by the WD and SD in response to the property owners of, what now constitutes Tammany Hills, to enjoin proposed improvements to the water and sewer systems, as well as the levy of local and special assessments and the payment of same. We believe this document is significantly relevant to your request because it reflects that both Districts apparently complied with the notices of intentions and hearings of objections required in Sections 3823 and 3982.
We have been advised by representatives of the District Attorney's Office that the litigation discussed hereinabove resulted in the case being dismissed, with prejudice, against the plaintiffs. This could adversely affect the successful filing of a subsequent suit raising the same issues. You may, wish to consult representatives of the District and Parish Attorneys Offices regarding the issue of res judicata. I am attaching a copy of this pleading for your reference and convenience.
We have not been provided with any additional documentation regarding your request. However, I have quoted and/or discussed the laws relating to waterworks and sewerage districts for your reference and convenience. In the event you receive additional materials, you can refer to these statutory provisions to determine the legality of said materials. Should your have any questions relating to your scrutiny of these laws, please do not hesitate to contact me.
While we have not been furnished with any additional ordinances, resolutions or publications associated with the proceedings incident to the statutes discussed hereinabove, the ability to contest same is limited by the peremptive provisions enumerated in Sections 3835 and 3994. As previously noted, they prohibit the institution of litigation to contest or question the validity or legality of any resolutions, ordinances or the issuance of certificates, unless suit is filed within thirty days of the publication of same. After thirty days, their validity and/or regularity must be conclusively presumed. In this connection, I confirm our telephone conversation on Wednesday, September 20, 2000, at which time we discussed the time constraints imposed by law.
You specifically ask whether property owners are required to tie into the new water line. While we can find no such requirement, we direct your attention to Attorney General Opinion No. 76-1747 which concludes:
 . . . if a proposition to empower the city to levy a special assessment is approved, then such levy will fall on all property owners in said area whose real estate has improved or benefited by the laying of said water line. The levy is against benefiting property owners, and one need not be connected to the water main in order to realize a benefit. (Emphasis added.)
With regard to your question relating to the lien for unpaid assessments, we again direct your attention to Sections 3827 and 3986, discussed supra. Thus, if certified copies of the ordinance levying the special assessments on the real estate are filed with the clerk of court in the parish in which the waterworks and/or sewerage districts are situated, and if they are recorded in the mortgage records of the parish, said ordinances shall operate as liens and privileges against all real estate therein assessed. The failure to pay the assessments, or any installments thereof, in a timely fashion will cause all other installments to become due and payable, and the districts may, after thirty days from the date of such default, proceed against the property owners for the collection of the total amount due.
With regard to your question concerning the rights of the homeowners, care should be taken that objections are raised and litigation instituted in a timely fashion to the extent authorized by law. As previously noted, litigation has already been filed and dismissed which may adversely affect the right to file litigation raising the same issues.
It should also be noted that Section 3827 provides for the payment of special water assessments in equal installments extending over a period not exceeding forty years, at the discretion of WD15. Likewise, section 3986 authorizes the payment of special sewerage assessments in equal installments extending over a period not exceeding twenty years, at the discretion of SD14. It would appear from the "NOTICE TO PROPERTY OWNERS" that the Districts have limited the annual installments to ten years, rather that the maximum of forty and twenty years authorized by law.
Finally, with regard to the professional fees incurred in connection with the improvements, it is the opinion of this office that said fees are the responsibility of the respective Districts. In accord are Attorney General Opinion Nos. 93-157 and 89-128.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/crt